UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 5:13-mj-00073 JLT |
| Plaintiff, ) ) | ORDER DENYING AS MOOT DEFENDANT'S |
| v. ) ) | MOTION TO SUPPRESS EVIDENCE |
| RONALD JACKSON, ) ) | (Doc. 11) |
| Defendant. ) ) | |

On November 20, 2013, Defendant was charged in a criminal complaint with a violation of 36 CFR § 261.3(a), Interfering with a Forest officer, volunteer, or human resource program enrollee or giving a false report to a Forest officer. (Doc. 1) The government alleges that Jackson made threats against a Forest officer, Brian Adams, on several occasions after Adams drove onto Jackson's driveway in an attempt to investigate a report of illegal cutting of firewood. In the current motion, Jackson seeks to suppress all "visual and auditory perceptions" by any law enforcement officer on November 12, 2013 as set forth in the law enforcement report, numbered 13-05-8754096, any physical evidence seized on November 12, 2013, any statements made by Jackson during the investigation and arrest, "all notes, reports, tapes, photographs, and other memorandum," and any form, document or memorandum signed by Jackson. (Doc. 11 at 3)

I.   **The complaint**

The complaint alleges that on November 12, 2013, U.S.F.S. Special Agent, Brian Adams, was

investigating a report of illegal firewood cutting. (Doc. 1 at 2) The complaint alleges that Adams "followed tire tracks from two freshly cut oak trees to a driveway," later determined to be that associated with Jackson's home. Id.

As Adams traveled up the driveway in his vehicle following the tire tracks, the complaint alleges Adams identified himself as a law enforcement officer to Jackson. (Doc. 1 at 2) Adams explained he was looking for a pickup truck described by the reporting party as having illegally cut firewood. Id. Jackson denied having such a vehicle, became angry and ordered Adams off of his property. Id. The complaint alleges Jackson told Adams to "get the fuck off his property" several times. Id.

In response, the complaint alleges Adams turned his vehicle and proceeded back down the driveway all the while Jackson screamed at him and threatened to place him under citizen's arrest. (Doc. 1 at 2) While exiting, Adams observed a pile of "freshly cut oak near" the residence and took pictures. Id. According to the complaint, when Jackson saw Adams take the photos, he became further enraged and screamed at Adams that he was under arrest and that Jackson was going to call the Sheriff. Id. The complaint asserts that Adams continued to exit while Jackson followed behind while stating, "Get the fuck out of here, you better leave, you fucking punk." Id.

The next day, the complaint alleges that Jackson contacted U.S.F.S. employee Anne Dumas and told her "They're [Forest Service officers] not welcome on my land. It's private property and if they come on my land again, I'll consider it a lethal threat." The complaint indicates that Jackson also stated: "If you see Brian Adams, tell him Ron Jackson is after him." (Doc. 1 at 2)

That same day, the complaint alleges Jackson contacted U.S.F.S. employee Brenda Ehmann and told her that Jackson would shoot Adams if Adams returned to his property. (Doc. 1 at 2) Purportedly, Jackson claimed that because Adams carries a gun, if he entered Jackson's property, Jackson was entitled to shoot Adams. Id. The complaint alleges further that Jackson reported that he intended to file a complaint against Adams with the Kern County Sheriff's Office and intended to file a lawsuit against Adams. Id.

The next day, on November 14, 2013, the complaint asserts that Jackson spoke to Brenda Ehmann by telephone. (Doc. 1 at 2) During this conversation, Jackson repeated that he believed

1  Adams was a threat to Jackson and stated, "these tactics of coming on private property and terrorizing
2  people is fascist Nazi [sic]. We have to stand our ground. We're Americans." Id.  Once again on
3  November 18, 2013, the complaint claims that Jackson appeared at the U.S.F.S. office and spoke to
4  Sherry Montgomery and, at that time, stated that he knew Adams carried a weapon and that Jackson
5  also has a weapon.  Id.  He reiterated to Montgomery that if Adams returned to his property, Jackson
6  would have the right to use lethal force against Adams.  Id.

**II.	Motion to suppress**

**A.	Jackson bears the burden of establishing standing to complain about the search and that it occurred without a warrant**

Jackson offers no evidence in his motion to establish that he has standing to raise the Fourth Amendment claim related to Adams' being on the driveway property.  Rakas v. Illinois, 439 U.S. 128, 132 n. 1 (1978) (The "proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.")  Likewise, though he argued the search was warrantless, he failed to provide evidence of this fact.[1]  United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977) (Burden shifts to the government to justify the warrantless search after the defendant produces evidence the search occurred without a warrant). Given these evidentiary failures, the motion should be denied. United States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972) (Failure to provide factual support of a possessory interest in the property search or seized justifies denial of an evidentiary hearing and denial of the motion to suppress.)

However, it appears the government does not contest that where Adams made contact with Jackson was on property owned or controlled by him and, upon the Court's inquiry, the government agreed Adams entered the property without a warrant.  Thus, the Court will "dispense with the rubric of standing" (Rakas, 439 U.S. at 429) and complete its analysis set forth below.

**B.	The government concedes the charge is based upon Jackson's alleged conduct after Adams visited the Jackson property**

In its opposition to the motion to suppress, the government asserts the motion to suppress

---

[1] Often evidence on both of these points is offered via stipulation.  However, if there was such a stipulation made by the parties, it was not offered to the Court.

3

should be denied because the evidence sought to be suppressed does not address Jackson's conduct after Adams' visit to his property. (Doc. 12 at 3) It is this conduct, the government asserts, which is the subject of the charge. Id. Counsel for Jackson agrees that to the extent the charge concerns only Jackson's conduct after Adams' visit to Jackson's driveway, the motion is moot. Therefore, the motion is **DENIED as MOOT.**

**C.    In the alternative, the Court would deny the motion because it fails to make a showing that an unlawful search occurred but even if it did, that the evidence should be suppressed.**

Under Fed. R. Crim P. 12(b), a defendant is entitled to move to suppress evidence if he believes the evidence at issue has been seized in violation of the Fourth Amendment of the Constitution. However, to meet his burden of moving forward, a defendant is required to detail in his motion the Fourth Amendment violation he contends occurred. The Court concludes Jackson has not met this burden.

In his motion, Jackson claims that the evidence at issue should be suppressed because, in essence, Adams was trespassing at the time he entered Jackson's property on November 12, 2013. As noted above, the government agrees when Adams entered onto Jackson's property, he acted without a warrant.

It is without dispute that the Fourth Amendment prohibits unreasonable search and seizure and applies to those that occur within the curtilage of the defendant's home. United States v. Dunn, 480 U.S. 294, 300 (1987). However, courts have determined that a driveway is only semi-private. United States v. Magana, 512 F.2d 1169, 1171 (9th Cir. 1975); See United States v. Bustamante-Gamez, 488 F.2d 4, 7-8 (9th Cir. 1974) ["It is by no means certain that the entry upon the driveway was contrary to the Fourth Amendment, even though there were no warrant or exceptional circumstances excusing failure to obtain one."]. Thus, officers may enter onto a driveway for purposes of a "knock and talk" in which they attempt a consensual discussion with the property's inhabitants.

In United States v. Perea-Ray, 680 F.3d 1179, 1187-1188 (9th Cir. 2012), the Court held,

> To be clear, it remains permissible for officers to approach a home to contact the inhabitants. The constitutionality of such entries into the curtilage hinges on whether the officer's actions are consistent with an attempt to initiate consensual contact with the occupants of the home.

To initiate a "knock and talk," officers are permitted to approach a house in any manner in which an uninvited guest could be expected to do so when approaching. Id. at 1188. "However, once an attempt to initiate a consensual encounter with the occupants of a home fails, 'the officers should end the knock and talk and change their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance.'" Id. quoting United States v. Troop, 514 F.3d 405, 410 (5th Cir.2008).

Here, Jackson's motion asserts that Adams entered onto Jackson's property[2] related to an investigation into illegal firewood cutting. (Doc. 11 at 4)  Jackson admits that the driveway at issue was the "point of ingress/egress for the property's occupants." Id. at 8.  Jackson describes that when Adams encountered Jackson, Jackson made clear he refused to talk. Id. at 4.  Jackson notes that as a result, Adams retreated to the public road. Id.  Thus, according to United States v. Perea-Ray, Adams' conduct up to this point was lawful and did not require a warrant.[3]  As a result, the Court concludes Jackson has not met his burden of going forward.

On the other hand, courts have determined that the exclusionary rule does not require suppression of evidence of an independent act which is committed during the illegal search. United States v. King, 724 F.2d 253, 256 (1st Cir. 1984).  In King, the court held,

> King argues that, since Landry was in the process of illegally searching him when the shot was fired, the search was poisoned by the previous illegality, i.e., that, but for the previous illegality, the shooting would never have taken place. We reject that contention. It has been said that:
>
>> The Court's decisions clearly indicate that the poisonous tree doctrine does not extend as far as a "but for" causation test might take it. If the means of acquiring evidence are substantially removed and distinguishable from the initial illegality, neither the "deterrence" rationale nor the "judicial integrity" rationale requires application of the exclusionary rule.

Id.  Though Jackson argues here that all evidence gathered during Adams' visit to the property and any

---

[2] Jackson asserts that the area where the contact occurred was within the curtilage of Jackson's home and admits "Adams went to defendant's residence" and "arrived at the residence due to an investigating he was conducting regarding illegal cutting of timber in the area. (Doc. 11 at 4, 6)

[3] Upon making his retreat, Adams saw a pile of oak firewood and took pictures.  The legality of taking these pictures need not be considered given the government has made clear that it does not rely upon whether Jackson cut firewood illegally to prove its case and the Court is hard-pressed to find that the pictures are relevant in any fashion to the charge.  The photos and Adams' observation of the firewood will not be admitted at the trial.

statements Jackson made should be suppressed, he fails to analyze or offer support that this evidence suffers from the taint of the asserted illegal search. United States v. Polizzi, 500 F.2d 856, 910 (9th Cir. 1974). Indeed, as noted above, after making clear he didn't wish to speak to Adams, Jackson voluntarily continued making statements—which were unrelated to the crime which Adams was investigating. Thus, even assuming the presence of Adams on Jackson's property required a warrant, the statements are far too attenuated to the crime that was under investigation such that suppression of them would not satisfy any of the goals of the exclusionary rule. Thus, Jackson's statements need not be suppressed.

On the other hand, at least one of the statements made by Jackson—"Get the fuck out of here, you better leave, you fucking punk"—could be interpreted as a threat against Adams. Crimes which occur that are independent of the illegal search generally, are not suppressed by courts. United States v. Garcia, 516 F.2d 318, 319-20 (9th Cir. 1975), ("[W]here the illegal conduct of the police is only a necessary condition leading up to the suspect's act, no taint attaches to his conduct; a "but-for" connection alone is insufficient.") Therefore, as to any statements made by Jackson while Adams' was on the property and any physical evidence seized or observed by Adams—except the photos of the firewood and Adams' observations of it—the motion is **DENIED**.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Defendant's motion to suppress is **DENIED as MOOT**.

IT IS SO ORDERED.

Dated:   **March 25, 2014**             **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE